UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------- x

UNITED STATES OF AMERICA

                                    17 Cr. 280 (KAM)

       -against-

EUGENIO PEREZ,

                     Defendant.

----------------------------------------------------------------------- x

### SENTENCING MEMORANDUM FOR DEFENDANT

# EUGENIO PEREZ

Kenneth J. Montgomery, Esq.
Attorney for Eugenio Perez
198 Rogers Avenue
Brooklyn, New York 11225
(718) 403-9261

Marisa F. Benton, Esq.
Attorney for Eugenio Perez
32 Court Street, Suite 707
Brooklyn, New York 11201
(718) 625-6777 ext. 2

1

**LAW OFFICE OF KENNETH J. MONTGOMERY PLLC**
198 ROGERS AVENUE
BROOKLYN, NEW YORK 11225
PH(718) 403-9261
FAX(347) 402-7103
ken@kjmontgomery.com

February 26, 2019

**FILED BY E.C.F.**
The Honorable Kiya A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, New York 11201

## RE:  *United States v. Eugenio Perez, 17 Cr 280 (KAM)*

Dear Judge Matsumoto:

This sentencing memorandum is written on behalf of Eugenio Perez ("Mr. Perez" or "Eugenio") a father and grandfather, with no prior criminal history and who will turn 49 this July.  Mr. Perez will appear before the Honorable Kiya A. Matsumoto for sentencing after being found guilty by a jury on May 12, 2018.  We respectfully request that the Court impose a non-guideline sentence. This would be sufficient but not greater than necessary given the objectives of 18 U.S.C. § 3553(a), including Mr. Perez' life history and characteristics, mitigating factors, the need for general and specific deterrence and the need to avoid sentencing disparities.

Mr. Perez' age, service to his community and dependent family members should be taken into significant consideration when imposing a sentence.  While, as discussed below, mercy is sought for Mr. Perez, we also stress that his arrest, prosecution and felony convictions and imprisonment will have an adverse effect on his elderly parents, children and grandchildren, including a twelve-year-old son. We are hoping that the Court will consider those factors when administering a sentence that is sufficient but not greater than necessary.

2

A.                          **TRIAL and MITIGATION**

Mr. Perez was convicted of all 23 counts in the indictment.  With respect to Jane Does 1-4, Mr. Perez was convicted of Deprivation of Civil Rights (18 U.S.C. § 242), Aggravated Sexual Abuse (18 U.S.C. §2241 (a)(1), Sexual Abuse (18 U.S.C. §2242 (1) and Sexual Abuse of a Ward (18 U.S.C. §2243(b) and with respect to Jane Doe # 3, an additional conviction of Abusive Sexual Contact (18 U.S.C. § 2244(a) (4) and with respect to Jane Doe # 5, only Attempted Sexual Abuse of a Ward (18 U.S.C. § 2243(b)).  During the trial, these women took the stand and testified that Mr. Perez abused his authority as a prison guard and violated them while they were inmates at the Metropolitan Detention Center in Brooklyn.   Notwithstanding the nature of the convictions, we believe it is crucial that mitigating factors related to the allegations in Mr. Perez' case be addressed.  We recognize that the underlying accusations in this case will undoubtedly invoke emotion, however, we ask that the Court not overlook certain details when deciding Mr. Perez' sentence.

In the Presentence Investigation Report (PSR) submitted by Probation Officer Victoria Main, she points out that Mr. Perez was not accused of obstructing justice or interfering with the investigation pending against him prior to his arrest.  Officer Main notes at paragraph 45 of the PSR the following;

> "The probation officer has no information indicating that the defendant
> impeded or obstructed justice.  While he did intimidate victims, the
> conduct does not rise to the level of obstruction of justice, since it was
> concurrent with his crimes of violence, and did not carry over once the
> defendant became aware of the investigation."

During the trial there was never any allegation made by any witness that Mr. Perez did anything to cover up or hamper the investigation where he and colleagues were suspects.  In fact, the trial testimony supports that at least two of the witnesses approached and initiated a

3

conversation with Mr. Perez to discuss the investigation by the United States Attorney's Office. While it has been mentioned that Mr. Perez abused his authority, it is not alleged that he utilized his authority, at any time, to threaten any inmates regarding the investigation or encumber its outcome.  We ask that the Court view this as mitigation.


B.   **MR. PEREZ' UPBRINGING, FAMILY AND CHARACTERISTICS**

With a desire to give back, have a respectable job and be an asset to the Brooklyn community he grew up in, Mr. Perez felt privileged to become a Correctional Officer with the Bureau of Prisons in July of 2002 (PSR ¶ 184).  Prior to joining the Bureau of Prisons as a correctional officer, Mr. Perez first started his law enforcement career as a member of the New York City Police Department. Having come from an immigrant, working class family that appreciated the value of hard work, Mr. Perez believed this job opportunity to be one that would bring his family and community an immense sense of pride.

Mr. Perez was raised along with his older sister, Lydia DeJesus, in Brooklyn by their mother, Gladys Perez, and father, Eugenio Perez Senior.  Perez Senior was born in  in Puerto Rico as well as Mrs Perez' parents.  Mr. Perez' home life was very old-school and consisted of traditional values, which included long work hours, home-cooked meals and church.  His father worked as a Superintendent while his mother worked at home, caring for her family and ensuring that everyone was loved and well taken care of.  Mr. Perez' parents are now in their 70's with serious health problems.  Mr. Perez Senior has "suffered two strokes, has high blood pressure and unspecified cardiac problems that have required the implantation of two stents (PSR ¶ 163). Mr. Perez' mother, Gladys, currently suffers from "high blood pressure, arthritis, back issues, unspecified cardiac problems and migraines" (PSR ¶ 163). This trial has had a devastating

4

impact on their health and spirit. Gladys was unable to attend the trial due to her poor health and Mr. Perez Senior attended trial every day, often crying throughout the proceedings.

At 19-years-old, Mr. Perez became a father to Kristen Perez, now 29-years-old with a child of her own. Though young, he understood that becoming a father was a tremendous responsibility, and so he married his then pregnant girlfriend (PSR ¶ 166). While their relationship did not last, Mr. Perez took his role as a father seriously and helped to raise Kristen. Mr. Perez remains extremely close with Kristen and describes their relationship as "special" as she is his first born.

In March of 2002 (PSR ¶ 168 incorrectly states 2003), Mr. Perez began dating, Yesennia Ontaneda with whom he has a son, Geno Perez, age 12. When they met, Yesennia had two children from a previous relationship. According to Yesennia, Mr. Perez accepted her children as his own and became a second father to them (PSR ¶ 168). In an attached letter [1] written by Yessenia to the Court, she writes, " *Eugenio is a man who always put his family first. When we met I was a single mom of 2 loving kids. My son was 11 yrs old and my daughter was 9. He took them both in as if they were his own. We now have 4 grandchildren who he loves dearly and does anything for them to fulfill their needs.* " (Bates stamp 000001) Ms. Onteneda told probation that Mr. Perez is an "excellent father and provider" and that he is a "family man" (PSR ¶ 169). Mr. Perez and Yesennia never married formally, however, they held themselves out as a married couple to the world for most of their relationship. Unfortunately, due to Mr. Perez' incarceration, Yessenia has been left, once again, a single mother raising their son, Geno, alone.

---

[1] Attached as Exhibit A are a collection of letters from Mr. Perez' friends and family and are bates stamped for the ease of reference.

### Life without his hero

In most of the attached letters submitted by Mr. Perez' family members and friends, the overwhelming concern is the well being of little Geno and how Mr. Perez' incarceration has completely devastated him. Prior to Mr. Perez' incarceration, he and his son were "extremely close and always together" explains Mr. Perez. In an attached letter (bates stamp 000003) written by Eugenio's sister, Lydia, she talks about the impact his incarceration has had on little Geno. She writes, "*he is a crushed, sad little boy.*" In Geno's letter to the Court (bates stamp 000002), attached, he writes, " *Please find it in your heart to set him free. I can't think and I can't concentrate. I'm lost without him.*" This letter demonstrates the fact that this 12-year-old child, like most, is not capable of coping with the long-term incarceration of his father. In his letter, Gino cannot fathom the reality that his teacher and protector will not be returning home tomorrow. It appears to be inconceivable for him to lose a father who was very present and had a positive influence on him. The letter highlights the devastating impact that long term incarceration has on families, especially children.

In a study published by Kristen Turney, a University of California-Irvine Sociologist and author, she explained that children of incarcerated parents are more likely to experience mental health needs, which include, learning disabilities; anxiety; attention deficit disorders; conduct problems; developmental delays and poor health[2]. Mr. Perez' separation by incarceration has affected Geno's ability to focus at school and at age 12, he is already exhibiting signs of clinical depression. Unfortunately, the longer Geno is without his father, the more harmful the effects of Mr. Perez' incarceration will be on him. Although there may be variances in every situation, "research has established that a parent's incarceration poses several threats to a child's

---

1.    [2]Kristin Turney, "Stress Proliferation Across Generations? Examining the Relationship Between Parental Incarceration and Childhood Health," *Journal of Health and Social Behavior* 55, no. 3 (2014): 302-19.

6

emotional, physical, educational and financial well-being". [3] Therefore, although Geno was a healthy, happy child prior to his father's incarceration, the removal of his father is likely to change the trajectory of Geno's life. Mr. Perez' niece, Michelle DeJesus, says in her letter (bates stamp 000004) of Geno, "*every time his father's name is mentioned, [he] breaks down in tears*."

The letters submitted by Mr. Perez' family and friends have provided a glimpse into the person they have known intimately, for decades. A person they love, admire and respect. Ms. Ontaneda describes Mr. Perez as "fun and loving". She also shares that Mr. Perez was a worshipping Christian who lead youth groups in church and mentored children and young adults.

## Asset to his community

The life Mr. Perez lead known to his friends and family should not be discounted. In the many heartfelt letters written on behalf of Mr. Perez, stories are told about a man who was well loved and respected. They tell stories about a man who made a positive difference in whatever environment he was in. They are stories that describe a man who they trusted, learned from and could count on.

In letter (bates stamp 000010) written by Mr. Perez' childhood friend, Richard Espinal, he recalls that "*without exaggeration*" Mr. Perez "*served as a role model for hundreds of youth and young adults, many of whom would not have found a path towards God without him.*" Another childhood friend, Denise Santiago recalls in her letter (bates stamp 000006) to the Court that Mr. Perez mentored young children from the East New York community and encouraged them to stay in school and have confidence. Another friend of Mr. Perez, Marilyn Figueroa, writes in her letter (bates stamp 000007) that she has lead church retreats with Mr. Perez and

---

[3]National Institute of Justice. Hidden Consequences: The Impact of Incarceration on Dependent Children. By Eric Martin https://www.nij.gov/journals/278/Pages/impact-of-incarceration-on-dependent-children.aspx

says that she always felt "*safe and protected in his presence.*"  Mr. Perez' friend, Derrick Jordan, adds in his letter (000008) that Mr. Perez mentored his son, now a Dallas Police Officer, and encouraged him to use his military training to help others.  Mr. Jordan believes his son is a Police Officer today because of Mr. Perez' "*support and encouragement.*"

Mr. Perez' brother-in-law, Michael DeJesus, recalls in his letter (bates stamp 000009) to the Court that Mr. Perez "*never hesitated to counsel and mentor the church youth movement as well as counsel adults, including myself.*"  Mr. DeJesus also recalls how Mr. Perez performed CPR on an inmate, partially resuscitating them.  Mr. Perez explained that the inmate attempted suicide by hanging and Mr. Perez, the lead CPR instructor at the prison, performed CPR, keeping the inmate alive until the paramedics arrived.   Friend and colleague, Nedgine Santana, adds in her letter (bates stamp 000005) to the Court that Mr. Perez provided "*spiritual support and friendship*" to her when she discovered she had a pituitary tumor.  She adds that despite enduring the stress of trial and a pending prison sentence, he continues to be there for her.

Among the aforementioned stories, the Court will learn more about the life Mr. Perez lead before his arrest on the instant matter in the submitted letters.  It will assist the Court in getting a clearer picture of who Eugenio Perez is and what he means to so many.  It will assist the Court in observing that this conviction is not the sum of all of Mr. Perez and that he is a man who has accomplished a lot of good despite the seriousness of this conviction.

## C.                                   <u>LEGAL STANDARD</u>

As the Court is aware, the United States Supreme Court decision in United States v. Booker, 543 U.W. 220 (2005), has reformed the way a sentencing judge imposes a sentence. Post Booker, the sentencing court may take into account the guideline range, but also has the discretion to depart from it.  In essence, the Court is no longer required to impose a sentence

within the guideline range.  The sentencing guidelines are, in fact, a mere consideration, among several, in determining an appropriate sentence.  *Kimbrough v United States*, 552 U.S. 85, 109 (2007).  The guidelines are only the "starting point and initial benchmark…" *Id, citing Gall v. United States*, 552 U.S. 38, 50 (2007). "Sentencing courts are not to 'presume that the Guidelines range is reasonable,' and instead they 'must make an individualized assessment based on the facts presented." *United States v. Thavaraja*, 740 F.3d 253, 259 (2d Cir. 2014) (internal citations omitted). It is the sentencing judge who has the advantage of familiarity with the details of the case and can best evaluate the import of § 3553 (a) factors. *Id, Kimbrough*, 552 U.S. at 109, *citing Gall*, 552 U.S. at 51.

In determining a sentence that is "sufficient, but not greater than necessary", the first of those factors the judge must consider is "the nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).  There is no question that the scope of this factor alone extends far beyond the guidelines and implores the sentencing judge to consider unique circumstances and characteristics of the defendant in each case.  A consideration of those characteristics, along with the remaining six factors,[4] are sure to adjust sentences that as they do not fit within the guidelines, yet are just and meet the objectives of sentencing set forth in § 3553 (a)(2). *See United States v. Ovid*, No 09-CR-216 JG, 2010 WL 39400724, at *1 (E.D.N.Y. Oct. 1, 2010).

---

[4] The seven factors are 1. The nature and circumstances of the offense and the history and characteristics of the offender; 2. The need for the sentence imposed to reflect the goals of sentencing set forth in §3553(a)(2); 3.  The kinds of sentences available; 4. The kinds of sentence and the sentencing range established for the applicable category of offense; 5.  any pertinent policy statement issued by the Sentencing Commission; 6.  The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and 7.  The need to provide restitution to any victims.  See 18 U.S.C. § 3553 (a)

Therefore, the Court may not simply presume that the Guidelines range is reasonable. *Gall*, at 50.  Rather, the Court must make an individualized assessment based on the facts presented.  From its unique vantage, the Court may conclude that, despite the guidelines, "in a particular case, a within-Guidelines sentence is 'greater than necessary' to accomplish the goals of sentencing…" *Kimbrough*, 552 U.s. at 101, citing 18 U.S.C. §3553(a).  The not "greater than necessary" language of the federal sentencing statute incorporates the need for the sentence to "reflect the seriousness of the offense", "promote respect for the law" and "provide just punishment for the offense." 18 U.S.C. cs 3553(a).  Indeed, as the Supreme Court suggested in Gall, a sentence of imprisonment may not promote respect for the law if it appears unduly harsh in light of the real conduct and circumstances of the particular case.  Gall, at 54; see also *Rita v. United States*, 551 U.s. 338, 351 (2007) (observing that district court may consider arguments that "Guidelines sentence itself fails properly to reflect § 3553(a) considerations")

Furthermore, "the punishment should fit the offender and not merely the crime, "*Pepper v. United States*, 562 U.S. 476, 477, (2011).

> The principle is codified at 18 U.S.C. §3661, which provides that "[n]o limitation shall be placed on the information" a sentencing court may consider "concerning the [defendant's] background, character, and conduct," and at §3553(a), which specifies that sentencing courts must consider, among other things, a defendant's "history and characteristics."

Again, the attached character letters provided by Mr. Perez' family and friends and information provided in the PSR will assist the Court in understanding that Mr. Perez is the sum total of what he has done in his life and shouldn't be defined by his convictions alone.


**D.**   **THE NEED TO AVOID UNWARRANTED DISPARITY IN SENTENCING**

In October of 2017, former prison guard, Edgar Daniel Johnson, 51, pleaded guilty in the Southern District of Georgia to three counts of willfully depriving female inmates of their Eighth

Amendment rights under color of law, three counts of obstruction for coercing the women to cover up the assaults and one count of maliciously conveying false information about explosive materials. (See Department of Justice press release attached as Exhibit B) It was alleged that Johnson, in his capacity as a prison guard, at the Emanuel Women's Facility, had non-consensual intercourse against the will of three inmates on more than one occasion. Additionally, Mr. Johnson also pleaded guilty to calling a fire station and falsely reporting a bomb threat on Elba Island in Georgia. US District Judge, William Moore sentenced Mr. Johnson to four years and three months followed by three years of supervised release.

In April of 2016, former prison guard, Marshall Thomas, was sentenced to 18 months jail and 10 years of supervised release, in the Southern District of Texas, before Judge Gary Miller. (see Department of Justice press release attached at Exhibit C) It is alleged that Thomas had non-consensual intercourse with one inmate who resisted his advances and that he vaginally penetrated another inmate with his finger. It is also alleged that Thomas threatened to "flag" the inmates should they disclose the incident, implying that he would interfere with her good time.

On January 29th of this year, a third prison guard, Apolonio Gamez, was sentenced to 24 months in prison and seven years of supervised release for sexually abusing several inmates while on duty (see Department of Justice press release attached as Exhibit D). The sentence was handed down by United States District Judge Jesus G. Bernal in Central California. It is alleged that Gamez engaged in sexual activity with one inmate while on duty in 2016. In May of 2017, it is alleged that Gamez had non-consensual sex with an inmate. Mr. Gamez also admitted to exposing himself to a third inmate and attempted to engage in sexual activity with her.

After *United States v. Booker*, 543 U.S. 220 (2005), sentencing courts must consider "the need to avoid unwarranted sentencing disparities among defendants with similar conduct." 18 U.S.C. § 3553(a)(6). Thus, sentencing disparities are now properly considered by sentencing

11

courts in their exercise of sentencing discretion. *United States v. Florez*, 447 F.3d 145, 157 (2d Cir. 2006); and *United States v. Wills*, 476 F.3d 103, 110 (2007). Perez' offense conduct is essentially the same as theirs, and his sentence should avoid an unnecessary disparity between them.

In the three aforementioned cases, the defendants were accused and convicted of the exact same charges Mr. Perez was convicted of and their sentences were significantly lower than the sentence recommendation of probation. We ask that Mr. Perez' sentence be comparable to the sentences handed down in the mentioned cases.

**E.**                     **SENTENCING RECOMMENDATION**

Eugenio Perez requests that the Court impose a sentence based on understanding and fairness and respectfully requests that the court impose a non-Guidelines sentence. In this case, a sentence at variance with the Guidelines is appropriate because a Guidelines sentence fails to take into account critical mitigating factors which Congress mandated must be included in arriving at the sentence to be imposed. 18 U.S.C. § 3553(a).

Mr. Perez' already fragile family should not be further impaired by a long period of incarceration, especially considering his lack of criminal history. Doing so would only traumatize his son and elderly parents, while providing no societal gain. *United States v. Galante*, 111 F.3d 1029, 1035 (2d Cir. 1997) ("the families of defendants are the intended beneficiaries of downward departure on the grounds of extraordinary circumstances relating to family responsibilities"); *United States v. Johnson*, 964 F.2d 124, 129 (2d Cir. 1992) (the potential for imprisonment to effect the destruction of an otherwise strong family unit can be a basis for a judge's discretionary departure from the range set forth in the Guidelines); and *United States v. Alba*, 933 F.2d 1117, 1122 (2d Cir. 1991) (same).

Regarding the PSR that puts Mr. Perez at an offense level of 43.  We submit that this is excessively high.  Furthermore, many of the points added are already covered in the original offense level of 34, which takes into account the fact Jane Does 1-5 were inmates, in custody. USSC § 2A3.1 (b) (1) adds points if the defendant was convicted of 18 U.S.C. 2241 (a), which applies to situations where a person is in custody and where threats or force are used.  To add more points because there are more sections that address custody and force is duplicative and patently unfair.  This highlights the exact reason why the sentencing guidelines are not appropriate in determining a fair and just sentence.

**F.**                                  <u>**CONCLUSION**</u>

We respectfully submit that the Court take into account Mr. Perez' dedication to mentoring youth in church, his children, especially 12-year-old Geno, his ailing elderly parents, mitigating factors and everything else contained in this report and in the attached letters and hand down an adequate sentence, which will be a sentence sufficient but not greater than necessary to punish him.

Respectfully,


*Kenneth J. Montgomery*
Kenneth J. Montgomery


*Marisa F. Benton*
Marisa F. Benton


13

# _EXHIBIT A_

9402 205 Street
Hollis, NY 11423


August 28, 2018


RE: Eugenio Perez


To The Honorable Judge Kiyo A Matsumoto,


I am writing to urge leniency in the sentencing of my fiancé and son's father, Eugenio
Perez. I am aware of the gravity of the crime he was convicted of and it is still so hard to
wrap my head around this. This is certainly not the man I know.

I met my fiancé Eugenio Perez on March 3, 2002. Eugenio is a fun and loving man.  A
father whose son looks up to and considers him, his hero.  Eugenio is a man who always
put his family first.  When we met I was a single mom of 2 loving kids. My son was
11yrs old and my daughter was 9.  He took them both in as if they were his own. We now
have 4 grandchildren who he loves dearly and does anything for them to fulfill their
needs.  Eugenio comes from a loving background. He was raised with both of his parents
and is very family oriented.

Eugenio Perez is a follower of God.  A great Christian who praises and worships God.  In
the beginning of our relationship Eugenio would attend a youth group called Jornada de
La Vida Christiana. He was a teacher and leader of the youth group. Young adults looked
up to him. He is a very wise man. He would always preach the word of God. I really
admired his strong faith.

Please take into consideration the above information mentioned.  I beg you Judge for
leniency in his sentencing. Eugenio is a great man who is truly missed and loved by all
his family. We need him home.


Sincerely,

Yesennia Ontaneda



**000001**

9402 205th Street
Hollis, NY 11423


September 10, 2018


RE: Eugenio Perez


To The Honorable Judge Kiyo A Matsumoto,


My Name is Geno Perez. I am 12 years old and I am Eugenio Perez' son.
Your Honor I am writing to you to beg you for leniency for my dad, Eugenio
Perez. My Dad is my hero. I miss him very much.

There are so many great things to say about my dad.  Although I'm only 12
years old and I have a lot to learn, my dad showed me how to be a
respectable and wise young man. He taught me how to defend and protect
myself.  My dad and I were always together. He would take me to school in
the morning and picked me up when he could. He is also a very religious
man. He loves God and always taught me how to pray. I go to Catholic
School and he's the one who helps me understand the Bible. We have also
had many father and son trips. When Mommy would go to work we would
go to the beaches or go to friends pools and just have an afternoon together.
We did all the chores together like food shopping and laundry.

Your Honor, my dad is a good man with a heart of gold. Please find it in
your heart to set him free. I can't think and I can't concentrate. I'm lost
without him.




Sincerely,

Geno Perez

Geno Perez



000002

Lydia DeJesus
1415 East 55th Street
Brooklyn, NY, 11234

September 8, 2018

Judge Kiyo A. Matsumoto

Your Honor,

First, thank you for taking the time to read this letter. I am writing this letter to vouch for my brother, Eugenio Perez, who has appeared before you in court.

Let me introduce myself. My name is Lydia DeJesus. I am the older sister, and only sibling of Eugenio Perez. My husband and I just celebrated our 30th wedding anniversary and we have three beautiful children, our daughters are educators and our son is a plumber. Along with sitting in your courtroom for my brother's trial, this letter is the hardest thing I have ever had to do. Hard because never in my life would I have thought that I would have to write a character letter to be used in defense of my brother. My brother is a good man, an innocent man. These past almost 16 months have been a nightmare. These accusations have broken our hearts, it has shattered our family, and it is 100% out of character for my brother.

When we received the news, I watched my elderly father age 10 years in the span of a couple of hours. My parents have not taken this well. We grew up in a loving and morally upright home. We were never street kids. We never had an issue with drugs, alcohol or the law. We attended church as a family and were active in youth groups into our 20's. And in my brothers case, beyond as a youth leader. He is a man who is hanging on to his Christian faith to sustain him during this ordeal. The man portrayed in your courtroom is not the man we know and love.

000003

The Eugenio Perez I know is a fun, loving family man, always respectful and always, always a gentleman. He is a man who adores his wife, children, grandchildren and family. A man who is missed dearly and misses his family dearly. We are all proud of the man my brother is. He is the only sibling I have and my partner in caring and helping with my parents. He is a hardworking man a great father, son, brother, friend. But no one is prouder, loves him more and misses him the most than his youngest child, his 11year old son. He is a crushed, sad little boy and it kills me. He has a birthday coming up and tells his mommy that all he wants is his daddy to jump out of a box. It wrings my soul to think my baby brother will not be with me when my children get married or become parents. That I will have to bury my parents alone. That his corny jokes or loving arms will not be there to help support me. We thought we lost him on 9/11 when he worked at the towers...the idea of my brother, a man we believe to be innocent of the charges bought against him, who has lived his life completely opposite to the man portrayed in court, the idea of him being in prison is much worse than 9/11.

I respectfully hope you will take into consideration his clean record, his supportive and loving family and have compassion during this process.

Sincerely,

*Lydia DeJesus*

Michelle DeJesus
1415 East 55th Street
Brooklyn, N.Y., 11234

Dear Judge Kiyo A. Matsumoto,

Thank you for taking the time to read my letter. My name is Michelle DeJesus, and I am a 27-year-old pre-k teacher in Brooklyn. I'm writing this in support of my uncle Eugenio Perez, or as I've called him for nearly 28 years, Tata.

I have to say, when news of the allegations against my uncle came out I was shocked, the whole family was shocked. It's not the type of man he is. He's not a monster, or an evil man as he's been depicted. He is a family man. A son, a father, a grandfather, an uncle. The type of man that will put his family before anyone or anything else. Regardless of your personal religious beliefs, he is a man of faith. Quick to send prayers out for anyone in need. I know during this time away from his family, he has only continued to pray and continues to turn to God for guidance.

Prisons are meant to rehabilitate people, in hopes that they will grow and learn from their mistakes. How can he prove his growth, show that he has learned from his experience, if he is stuck there for the rest of his life? Miss out on weddings, births, deaths. He is not a threat to society, he is not a monster. He has a family that loves him and needs him home, where he belongs. A family that will continue to love and support him, until death.

My uncle has missed multiple family deaths, and has been left to grieve on his own, instead of with his family, unable console his parents and sister. He was not given the chance to say goodbye to those we've lost. My grandparents have continued to suffer day after day at the thought of never being able to see their son again, and I'm sure it kills my uncle to think he may never see his parents again. I have watched my mother's health deteriorate, because of the stress and depression she has felt during this time. He has a son in middle school, my younger cousin Geno, who needs his father. A son, who every time his father's name is mentioned, breaks down in tears. And yet, this little boy is hopeful that one day he will be able to see his

000004

father, hug his father, laugh and live with his father again. How can we, as adults he looks up to, tell him he may not get that chance during his childhood? His granddaughter is three years old, and she believes that when she goes to visit him, she is going to "Lelo's house." How sad is that? A three-year-old, going to prison, thinking that it is her grandfather's house? Keeping my uncle behind bars isn't just hurting him, it is hurting his family.

I remember one of the last conversations I had with my uncle, before all of this happened. We were out celebrating my father's birthday. We spent the night laughing at how similar we were. He kept telling me how proud he is of the woman I have grown to be. The first in my family to graduate college, and then again to complete my master's degree. I dedicate my life to helping children. Advocating for them when they are unable to advocate for themselves. Often times taking the role as Mommy for my students who have parents in prison, or are living in shelters, or really just need a little extra love and affection. My uncle used to brag about me and my accomplishments, at work, out with friends, and really to just about anyone that would listen. My uncle and I are both no nonsense people. Quick to call people out on their B.S. We stand up for our truth and for our beliefs. If I thought my uncle was as evil as he was portrayed, he would know it, and I would let you know it. But that is not the case.

I ask you to please take time and think about the letters you've received from my family. Keep us in your mind as you decide his sentencing. Give us the chance to be able to hug him, laugh with him, make memories with him again. I am appreciative of you taking time out to read our letters, hear from the people who know him best. I hope to see my uncle again soon.

Sincerely,

Michelle C. DeJesus

Michelle Celeste DeJesus

Nedgine Santana
2056 E 52nd Street
Brooklyn, NY 11234

October 02, 2018

Honorable Kiyo A. Matsumoto
United State District Court
Eastern District New York
225 Cadman Plaza East
Brooklyn, NY 11201

Your Honor,

I am writing this letter to you to provide a character reference about Mr. Eugenio Perez whom I have known as a friend and a colleague for a period of six years. Mr. Perez and I are both aware of the gravity of the crime he was convicted of, but it is still hard for me to wrap my head around. This is not the man I know and I'd like to give you a perspective that shows that he is more then what he have been convicted of. I was both troubled and surprised to hear about his recent case as he was always been a rather solid person. I understand the seriousness of this matter however; I hope the court will show some leniency.

I can say with a total confidence that few men have Mr. Perez Zeal and dedication. Eugenio Perez has always been an upright character in the community. In our friendship he has really been there for me especially when I found out I have a pituitary tumor and needed surgery. He made it a point to be there and show a significant amount of support during a sudden, and arduous medical issues. Despite his own personal troubles while going through his trial. Eugenio Perez has always been there for me and my family, willing to lean a hand. I honestly don't think I would have gotten through dealing with this sudden medical issue without his spiritual support and friendship. Mr. Perez was a source of camaraderie for both me and my family. He has fully been a good friend over the years.

It is my sincere hope that the court takes this letter into consideration at the time of sentencing. Despite the current case I still believe Eugenio Perez to be an honorable individual, a dear friend a devoted father a valuable member of my community and a good human being.

Sincerely,

Nedgine Santana

000005

June 20, 2018

Judge Kiyo Matsumoto
United States District Court
Eastern District of New York
2225 Cadman Plaza East
Brooklyn, NY 11201

Dear Judge Matsumoto,

I am writing on behalf of Eugenio "Geno" Perez who is currently pending sentencing on sexual assault charges.

I have known Eugenio "Geno" Perez for over 40 years. The Perez family and my family are very close friends. Geno and I were more like brother and sister. We spent many family holidays and yearly events together. Together we were active in church from children to adulthood, we went to high school together, and I was even one of the first he told when he was going to be a father for the first time and when he first applied to be an officer. Your honor to say that I know Eugenio "Geno" Perez very well is an understatement.

The 'Guilty' verdict of such accusations has left everyone in complete dismay. These charges against him has destroyed the family and him. There has never been any such accusation towards Eugenio "Geno" Perez. On the contrary, his involvement working with people in religious retreats, within the church and the community were always positive. Everyone enjoyed being around him, his caring heart, knowledge, wisdom and his love for music; especially Salsa.

Geno is a God fearing man that loves his family, friends and God very much. He was always respectful towards woman and never made anyone feel uncomfortable with his presence. I can say with confidence that Geno was always a gentleman and very much loved and respected by the community and peers. He mentored young children (mostly the boys) from our East New York community; guiding them in the path of the church, school and mostly leading them into the crazy world/society with confidence of being whoever they wished to be as adults.

Your Honor, my strongest concern currently is Geno's state of mind, well-being, his children's well-being, as well as his parents' but mostly his granddaughter's future. Both his young son and granddaughter (future grandchildren) will not be able to grow up with the love, support and guidance from Geno. As a family we stand strongly behind Eugenio "Geno" Perez and ask your Honor to please be lenient on your sentencing decision. I respect your authority your Honor and ask that you please take into consideration his life and future, as well as his family.

Respectfully,

Denise Santiago
3339 Holland Dr.
Orlando, FL 32825
347-248-9704

Date: June 18, 2018

**Re: Eugenio Perez**
**Subject: Character Reference Letter**

To: Whom It May Concern;

 I, Marilyn Figueroa am writing this letter to you to provide a character reference about Mr. Eugenio Perez, who I know as a friend for over 30 years. I provide this reference in full knowledge of Mr. Perez's charge of sexual assault. I can say with total confidence that Mr. Perez has contributed mentorship to the youth of our community with respect and loyalty. I have worked in retreats and events alongside Mr. Perez as leaders. He has always been respectful and admired for his knowledge of history and for his faith in God. During my friendship with Mr. Perez, I have experienced an individual who works hard and carries himself in a respectable manner. In addition, Mr. Perez is a family person who has always presented himself with levelheadedness. There has not been a single incident where there was a complaint against Mr. Perez. I was shocked to know that he was found guilty of such accusations. I never felt in danger or disrespected by Mr. Perez. On the contrary, I felt safe and protected in his presence. I am concerned for Mr. Perez's future as well as for the future of his young son and young granddaughter who need him. So I plead to you to please be lenient with Mr. Perez's sentencing. I can promise you that Mr. Perez is no monster. For all the years that I have known him, he has had the reputation of being a good person with a good heart. In closing, I'd like to restate my wholehearted support for Mr. Eugenio Perez.


Thank you for your attention to this matter and for your time.


Respectfully,

*Marilyn Figueroa*

Marilyn Figueroa


000007

June 30, 2018

Honorable Judge Kiyo Matsumoto,

Thank you for giving me an opportunity to address the court on behalf of a
dedicated father, family man, and a dependable friend to me and my family for
over 8 years, former Lieutenant Eugenio Perez of the Federal Correctional
Department, better known to us, his family and friends, as Gino.   While the crimes
he has been convicted of committing against women are extremely troubling, Gino
is far from the person portrayed in this court room and in the media.  Gino is a
mentor to young black and hispanic men, one of which was my son.  Gino
encouraged my son to use his military training to help others after completing his
military service and transitioning back into civilian life.  My son has been a Dallas
Police Officer for the past 4 years because of the support and encouragement of
Gino.

Gino is a dedicated father and grandfather.  Gino is a good person who is needed
by his family and friends very much, especially his wife and young son.  The
eternal removal of this man from his home and community perpetuates the
example of broken families which has diminished the importance of family values.
Gino has actively sought to ensure his family is not an example especially since
this new generation who has no sense of value for life.  Gino values family and
life.  He should be allowed to return to his family and friends after a reasonable
concurrent sentence.

I have watched this man build his career within the Federal Correctional
Department very diligently and conscientiously.  We are all having a hard time
processing what has happen and the detriment it has caused to so many families.
I'm asking for you to show mercy on my friend who has always been there for me
and my family.  Please consider Gino's family and friends who has been affected
dearly.  We are saddened for all involved.  Please do not let the horrible impression
created by others of Gino be your only consideration of in your decision when
sentencing.  I urge you to look at the entire life work and support of Gino. We all
deserve more than that including the victims.


I'm aware you have an obligation to protect victims of a crime and to set examples
to try and dissuade others from victimizing the helpless.  However, I ask that you
utilize your discretion and not dispense a sentence to the full extent of the law in
this case.   Please take into account his family, his mentorship of others, and his
dedication to his community.  Please dispense a sentence that is reasonable and just

but allows Gino to reintegrate into society as a father, grandfather and mentor to others.

Thank you for giving me some of your valuable time to speak about a truly good friend and mentor.

Derrick P. Jordan

Michael DeJesus
141 East 55th Street
Brooklyn, NY, 11234

July 12, 2018

Judge Kiyo A. Matsumoto

Your Honor,

My name is Michael DeJesus and I am the brother-in-law of Eugenio
Perez. I have come to know him since our childhood in church
where our families were staples, always present always involved. It
is there where I met his sister to whom I have been married to for
30 years and together we have raised three beautiful and
successful children. I have worked as a field technician for the same
company for 22 years. I say this to emphasize the fact that in over
30 years the man that I know is not the man convicted of these
horrible crimes.

The man that I know was truly a spiritual man who never hesitated
to organize and counsel and mentor the church youth movement as
well as counsel adults, myself included. He has always been
extremely helpful with his parents who are now unfortuntely
elderly, ill, completely destroyed and blaming themselves. He is the
godfather to my son and numerous others. As well as a loving
father and grandfather.

Aside from his convictions he has excelled and risen up the ranks in
his career. He has told me of an instance of performing CPR and
resusitating an inmate.  This is the man that I know.  What
happened behind the walls of that institution I cannot explain.
What those women endured saddens me.  My entire family is
destroyed over this and are extremely sorry.  It is an tremendously
dark time in all of our lives. The thought of losing him for the rest

of all of our lives is unfathomable. So I am asking that you please consider some leniency when sentencing him.

Sincerely,

July 9th, 2018

Honorable Kiyo A Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

To the Honorable Kiyo A. Matsumoto:

I am writing on behalf of Eugenio Perez, Jr. (Geno), who I have known for almost 30 years. Geno and I met many moons ago as members of the same Catholic youth ministry, and since he was a few years older, in many ways, he served as a role model to me. In truth, without exaggeration, I can say that Geno has served as a role model for hundreds of youth and young adults, many of whom would not have found a path towards God without him.

Geno was a man who would cry hearing the words of Scripture, whose heart would burst with joy as he sang to the Lord. It was a blessing to share a stage with him or hear him preach the Good News of Jesus.

However, it seems clear that Geno has strayed from that path and without question, the actions that led to his conviction should never be emulated. So, I write to you not to defend the man Geno has become, but to seek your help in saving the man he was, the person I know is still somewhere within.

One of my core beliefs is that anyone can be redeemed or to put it more succinctly, that God allows U-turns. Now, I realize that your duty and concern has nothing to do with "saving" Geno and everything to do with seeing justice done, for his victims and society. But a society that solely focuses on the idea of "an eye for eye" will soon find itself half-blind. However, the justice that Jesus practiced revolved around not causing more harm but instead, offering restoration, giving those who have sinned an opportunity to come back to their rightful place. Geno's family needs him but even more so, those he hurt and our society needs him, to not only return to who he was but to use the same talents that he once used to preach the Word and convert hearts, to speak out against sexual assault and misogyny. If it is at all possible, instead of sitting in prison cell, compel him to face the truth of his actions through counseling and training, by making him part of the solution.

Please accept my gratitude for reading this letter and for the work you do on our behalf.


Respectfully,

Richard Espinal
Catholic Charities
1011 First Ave
New York, NY 10022


000010

June 22, 2018

Judge Kiyo A. Matsumoto

Your Honor:

I am writing to urge leniency in the sentencing of my brother-in-law, Eugenio Perez. I have known Eugenio Perez for more than 20 years. I am aware of the gravity of the crime he was convicted of but it is still hard for me to wrap my head around. This is not the man I know and I would like to give you a perspective of the person I know and love as a brother. I hope you will take this letter into account upon making your decision.

Eugenio Perez has created a beautiful family alongside my sister and their son who is 11 years old. He also has a beautiful daughter from a previous marriage. His children love and adore him. The way he has raised his son until the day he was confined has been admirable. His son, Geno Perez, respects and admires his father for all that he has done for him. He cries for him every single day and has not been the same since his father was taken away.

Eugenio Perez has always been there for me and my family. He's always willing to lend a hand with everything from picking up my daughter from school to helping me paint my house. He is the Godfather to my oldest child, Angelina, and he has always been there for her. After school, he would always help her with homework, help her study for tests, and he would even take her out for a break to the store and get ice cream. My daughter loves him and misses him every single day. I appreciate him for all he has done for me and my family.

Eugenio Perez is, in short, a good person. He has always been kind and generous with others. He is a very responsible son, husband, father, godfather, uncle, grandfather and family member. This offense is Eugenio's first criminal charge ever. He has always been an outstanding citizen who has also taken part in the church community. I wish him the best outcome and I will continue to support him as all his family and friends do.

It must be a difficult decision for you to make when you don't actually know the person you will be sentencing, so I hope you will look at my letter along with the others you are receiving, and understand that Eugenio Perez is the kind of person who is loved and considered a close friend and family member.

Should you need to verify any of my statements above, please feel free to call me at (917) 804-3456.

Thank you for your consideration,

**Yenicia Ontaneda**
Eugenio Perez's Sister-in-law
220-08 Stronghurst Avenue
Bellerose Manor, NY 11427

000011



**IL PAPIRO**

Juan León Celleri & Marilyn Rivera
50-21 39th Place 1E
Sunnyside, NY 11104

Re: Eugenio Perez                                                                                July 31, 2018

Dear Honorable Judge Kiyo A. Matsumoto,

My name is Juan León Celleri and my wife Marilyn Rivera, we are writing to you about Eugenio Perez or
Geno as we know him for 13 years. We are friends and cousins by marriage to my cousin Yesenia Ontaneda.
We are owners of IL Papiro, a retail store in Palm Beach, FL and in NY for 32 years.  Our ability to be in NY
with our store and be with family gave us the opportunity to get to know Eugenio as his relationship
blossomed with my cousin.

As all Latin families are, we accepted Eugenio as a family member, seeing his love for our cousin, his own
family and all of us.

His dedication to her was one to admire, even though they were from different cultures, being from Ecuador
and Puerto Rico. Our common ground was love for family and music. He would astound us how old a soul
he was when he would sing old Latin melodies to tunes I heard as a child. There was an immediate bond on
my part and my wife would share recipes and music with him sharing the same nationality.

His love of all sports especially the Mets bonded us immediately. Our visits would be filled with sports
stories over some good food. One endearing quality of Eugenio, was his spirituality. He became a
charismatic Christian in the Catholic Church and was totally involved with the youth and retreats for adult
couples. This always gave us a sense of his place in the family and in society.  It is very unusual to see young
couples these days attending church and being involved, but that was Eugenio. His friendliness, disposition,
selflessness and heart are what made friendship easy.

When they had Geno, his elation was unsurpassed because now he had a boy. We were all happy for them
both and for his daughter. Eugenio is a wonderful, respectful son, always caring and visiting his parents, who
loved their son and grandson and adopted our family as well. Eugenio's parents are the most gentle, loving
parents. They have always kept the faith and suffer much these days not only for their son but their grandson
as well. Little Geno has spent many day's crying, for his dad, his hero without consolation. The daughter,
surely has been suffering that her dad will not see her daughter, his granddaughter, grow up.

It has been a long year filled with a void at our family functions, Christmas, Birthday's, Father's day,
Mother's day with Eugenio not by his family's side. Our faith in God and Eugenio's faith have kept us from
despair this past year.

We have always been a God fearing family, and we have prayed that the Lord watch over him and his
Mother and Father. As parents, this has a sense of breaking one's heart and faith.

Our faith in the justice system is tested every day, as we read the news, but we are steadfast in our beliefs in
the system that as Americans we proudly say is the most just in the world.

Your Honor, we ask for clemency for Eugenio Perez, we believe society would benefit from his presence and
not his absence. He is an outstanding young man, citizen, husband and father.  We pray to God that he guides
you into making a right and fair decision.

Respectfully yours,

Juan León Celleri & Marilyn Rivera

000012

**Kevin Vargas-Colon**
57 Ring Ln
Levittown, NY 11756
(516) 754-6570
kcolon1775@gmail.com

10 October 2018

Honorable Judge Matsumoto,

My name is Kevin Vargas-Colon. I worked at the Metropolitan Detention Center Brooklyn from June 2006 through August 2016, before separating from government service, as a Lieutenant with the federal bureau of prisons, to return to school full time.

Eugenio Perez was one of the first officers I met when I began my career in Brooklyn. Mr. Perez was a veteran correctional officer at that time, with multiple collateral duty positions. He was well versed in policy and procedures, and passionate about training new staff. Mr. Perez's knowledge, sound correctional judgement and willingness to mentor junior officers, had immense benefits to the safety of both staff and inmates in our charge. Mr. Perez routinely, sought and assumed, positions and titles of increasing leadership and responsibilities with one goal in mind, to establish and provide a safe environment for all.

I know Mr. Perez to be of good moral character, so much so,  that we developed a personal friendship. I consider him to be a part of my family, as well as, a mentor and peer. Never, in either our personal or professional relationships, have I known or would expect, Mr. Perez to be capable of any criminal act.

As a combat veteran, I understand the importance of integrity, honor, and commitment. These are characteristics that are important not only to the success of a mission on the battlefield, but also to the safety of your fellow service member. They are characteristics that are also invaluable in a correctional environment, as the imminent threat of danger in a correctional setting is comparable to those dangers faced in a warzone.  They are also characteristics that Mr. Perez routinely showed, and I've borne witness to, since I first met him in 2006.


Sincerely,


**Kevin Vargas-Colon**

000013

19 September 2018

To Judge Kiyo A. Matsumoto

**Re: Character Reference for Eugenio Perez (Geno)**

Your Honor,

I am writing this character reference letter for my cousin Eugenio Perez. (Geno)

Geno has always been a man of good moral character. It may seem hard to believe in the given circumstances, but this is true nonetheless. Eugenio was raised in a very loving catholic family. Since infancy, church and god, has always been a priority to the family.  Sundays were always gods day and we all attended church, then the family would gather, in the afternoon, for dinner and to spend time together.  Once Geno became a young teenager, he was constantly involved in a variety of church functions, was a member of the youth group, participated in numerous religious retreats, and was always preaching god's words.

Geno became a father at an early age, and adores his daughter.  It seemed like there was nothing that he wouldn't legally do, in order to provide for her both physically, emotionally, and always ensured that she was raised in a stable and loving household.  Many years later, Eugenio became a father again to a beautiful son.  The bond between him and his son is very strong.  Wherever Geno went, his son was always with him. Geno could never do any wrong in his sons eyes.....this incident has caused his son to become very sad, depressed and confused as to why he cannot be with his father.

Whenever Geno was off work, you would always find him spending time with his family and good friends. He is smart, young, very outgoing and also very respectful.  Geno is a decent man at the core who has always gone above and beyond for family and friends.  Everyone who met him always left with a smile on their face.

 As you can see, it is totally out of his character to be accused and charged for a crime as this one.  . Geno has never been the type of person to disrespect, intimidate, sexually assault, or show any type of violence towards women.  I hope you will take into consideration the future of this young man, and make a fair decision.

If you wish to verify any of the above statements, please do not hesitate to contact me.

Thank you,

Yours sincerely,

*Laura Thompson*

Laura E. Thompson

000014

Sept. 20, 2018

TO: THE HONORABLE JUDGE KIYO A. MITSUMOTO
RE: LINIENCY ON SENTENCING OF EUGENE PÉREZ (J-2017-07512)

GREETINGS, MY NAME IS LUIS C. SANTIAGO PÉREZ, RETIRED MILITARY POLICE FROM THE U.S. ARMY. I'M AWARE THAT MR. EUGENE PÉREZ IS AWAITING SENTENCING DURING THE MONTH OF OCTOBER 2018. THE PURPOSE OF THIS LETTER IS TO HUMBLY REQUEST LINIENCY ON BEHALF OF MR. EUGENE PÉREZ, WHOM I'VE KNOWN MY ENTIRE LIFE.

WE (GENO AND ME) WERE RAISED TOGETHER FROM A HUMBLE FAMILY WHO IMMIGRATED FROM PUERTO RICO IN THE EARLY 1960's. THE PÉREZ'S FAMILY ONLY DESIRE WAS TO WORK HONESTLY, RAISE THEIR FAMILIES AND PRAISE THE LORD.

EUGENE PÉREZ WAS RAISED TO EDUCATE HIMSELF WORK HARD, HAVE A FAMILY AND PRAISE THE LORD. GENO ALWAYS HAD A HUMBLE HEART ALWAYS CARING FOR OTHERS. HE'S A FINE GENTLEMAN AND HAS GOOD PRINCIPLES AND VALUES. SOME HOW HE'S INVOLVED IN THIS MESS WHICH I HONESTLY DON'T SEE HIM DOING AS CHARGED, BUT I HAVE GREAT RESPECT FOR THE JUDICIAL SYSTEM AND ABIDE BY THE LAW.

I HUMBLY ASK BY THE GRACE OF GOD AND FOR THE HEALTH OF HIS PARENTS THAT AT LEAST YOU BE LINIENT IN HIS SENTENCING.

AS I MENTIONED BEFORE, I WAS AN MP IN THE ARMY AND SEEN OFFENDERS GIVEN A SECOND CHANCE AND BECOME EXEMPLARY CITIZENS. I AM ABSOLUTELY CON-VINCED THAT IF GIVEN A SECOND CHANCE TO MR PÉREZ HE WOULD BE AN OUTSTANDING CITIZEN

IF YOU WOULD LIKE TO DISCUSS MR. PEREZ'S
CHARACTER FURTHER, PLEASE CALL ME ANYTIME AT
787-614-7230

SINCERELY

Luis C. Santiago Perez

# *EXHIBIT B*

Case 1.17-cr-00280-KAM   Document 127   Filed 02/26/19   Page 36 of 43 PageID #: 3286

## JUSTICE NEWS

**Department of Justice**

Office of Public Affairs

FOR IMMEDIATE RELEASE                                                     Monday, June 11, 2018

## Former Georgia Prison Guard Sentenced in Connection with Sexual Assaults of Female Inmates and Bomb Threat

The Justice Department today announced that former Georgia prison guard Edgar Daniel Johnson, 51, was sentenced to 51 months in prison for sexually assaulting three female inmates at the Emanuel Women's Facility in Swainsboro, Georgia; for coercing the women to help him cover up the assaults; and for making a bomb threat at Elba Island on a separate occasion, in May, 2017. The Court will determine the amount of restitution owed to the victims at a later hearing.

In Oct. 2017, Johnson pleaded guilty in the Southern District of Georgia to three counts of willfully depriving the inmates of their Eighth Amendment rights under color of law, three counts of obstruction for coercing the women to cover up the assaults, and one count of maliciously conveying false information about explosive materials.  During the plea hearing, Johnson admitted that, between Nov. 1, 2012, and Sept. 30, 2013, while he was working as a Georgia Department of Corrections prison guard at the Emanuel Women's Facility, he engaged in non-consensual vaginal intercourse, on more than one occasion, with female inmates S.A., M.A., and M.P. Johnson further admitted that each act of intercourse was against the inmate's will and violated the inmate's right under the Eighth Amendment to be free from cruel and unusual punishment, which includes the right to be free from unwanted sexual assaults.  Johnson further admitted that he coerced each of the inmates to cover up the assaults.

Johnson also admitted that on May 3, 2017, in an unrelated matter, he used a cellular telephone to call Southside Fire in Chatham County, Georgia, and falsely report a bomb threat at Elba Island.  Johnson admitted that at the time he called in the bomb threat, he maliciously conveyed the threat even though he knew the threat to be false.

"This defendant abused his legal authority to prey on vulnerable women who had been entrusted to his care," said Acting Assistant Attorney General John Gore. "The Civil Rights Division is committed to protecting the rights of all individuals, and will hold law enforcement officers who violate the law accountable."

"No one is above the law, and the criminal actions of this former prison guard compel a strong rebuke. Anyone who chooses to prey on others under color of official right should expect federal prosecution and jail," said United States Attorney Bobby L. Christine.

"Corrections officials have a difficult and important job, but we cannot allow them to abuse their authority and assault the very people they are charged with supervising," said J.C. Hacker, Acting Special Agent in Charge of FBI Atlanta. "The FBI will not allow the actions of a few to tarnish the many corrections officials who do their job every day, maintaining order and respecting the law."

This case was investigated by the FBI's Augusta Resident Agency with assistance from the Georgia Department of Corrections and the District Attorney's Office for Swainsboro, Georgia.  The case is being prosecuted by Assistant U.S. Attorneys Tara Lyons and Matthew Josephson of the Southern District of Georgia and Trial Attorney Risa Berkower of the Justice Department's Civil Rights Division.

**Component(s):**
Civil Rights Division
Civil Rights - Criminal Section

Case 1.17-cr-00280-KAM   Document 127   Filed 02/26/19   Page 37 of 43 PageID #: 3287

**Press Release Number:**
18-762

*Updated June 11, 2018*

# *EXHIBIT C*

United States Department of Justice

THE UNITED STATES ATTORNEY'S OFFICE

SOUTHERN DISTRICT *of* TEXAS

U.S. Attorneys » Southern District of Texas » News

**Department of Justice**

U.S. Attorney's Office

Southern District of Texas

FOR IMMEDIATE RELEASE　　　　　　　　　　　　　　　Friday, April 15, 2016

# Former Guard Sentenced for Having Sex with Inmate

HOUSTON – A former guard at the federal prison camp in Bryan will now be on the other side of prison bars following his conviction on one count of sexual abuse of a ward, announced U.S. Attorney Kenneth Magidson. Marshall Thomas, 35, of College Station, pleaded guilty to the charges Jan. 7, 2016.

Today, U.S. District Judge Gray Miller handed Thomas a 18-month sentence to be immediately followed by 10 years of supervised release. He must also register as a sex offender.

Thomas was charged with engaging in a sexual relationship in July 2014 with two different inmates while he was employed as a correctional officer.

Beginning in March 2014, Thomas began supervising a female inmate at federal prison camp. Soon after, he began making inappropriate comments to her and began to hug, kiss and touch her inappropriately whenever they would be alone. On or about July 19, 2014, Thomas directed her to go into the back of the dry storage room behind several boxes. At that time, Thomas began to kiss her, unzipped his pants and pulled down her pants. She resisted his efforts to have intercourse, but he did it anyway.

Thomas told her that if she reported any of the inappropriate conduct he would "flag" her and that "it was his career and her good time."

Previously released on bond, Thomas was permitted to remain on bond and voluntarily surrender to a U.S. Bureau of Prisons facility to be determined in the near future.

The charges are the result of an investigation conducted by the Department of Justice - Office of the Inspector General. Assistant United States Attorneys Ruben R. Perez and Jill Stotts are prosecuting the case.

**Topic(s):**
Civil Rights

**Component(s):**
USAO - Texas, Southern

Updated April 19, 2016

# *EXHIBIT D*

Case 1:17-cr-00280-RAM   Document 127   Filed 02/26/19   Page 42 of 45 PageID #: 3292

United States Department of Justice

THE UNITED STATES ATTORNEY'S OFFICE

CENTRAL DISTRICT *of* CALIFORNIA

U.S. Attorneys » Central District of California » News

**Department of Justice**

U.S. Attorney's Office

Central District of California

FOR IMMEDIATE RELEASE                                    Tuesday, January 29, 2019

## Correctional Officer at Federal Prison Facility in Victorville Sentenced to Two Years in Prison for Sexually Abusing Female Inmates

*RIVERSIDE, California* – A former correctional officer at the Federal Correctional Complex in Victorville has been sentenced to 24 months in prison for sexually abusing several female inmates while on duty.

Apolonio Gamez, 41, of Lake Elsinore, was sentenced late Monday by United States District Judge Jesus G. Bernal. In addition to the prison term, Judge Bernal ordered that Gamez would be on supervised release for seven years after he is released from prison. Gamez was also ordered to pay a $5,000 special assessment and to register as a sex offender when he is released from prison.

Gamez pleaded guilty in October to three felony charges: two counts of sexual abuse of a ward and one count of attempted sexual abuse of a ward.

According to Gamez's plea agreement, he engaged in sexual activity with the inmates between September 2016 and July 2017 while he was on duty as a correctional officer and employed by the United States Bureau of Prisons.

On two occasions in the autumn of 2016, Gamez engaged in sexual activity with one inmate while he was on duty.

In May 2017, Gamez caught another inmate stealing food, threatened to send her to the "hole" (a reference to the prison's special housing unit), and then directed her to engage in sexual activity with him, his plea agreement states. Gamez's victim did not resist because "she felt frozen and powerless with fear," according to court documents.

Gamez also admitted to exposing himself to a third inmate and attempted to engage in sexual activity with her during the summer of 2017.

The case against Gamez was investigated by the Department of Justice, Office of the Inspector General and the Federal Bureau of Investigation.

This matter was prosecuted by Assistant United States Attorney Sean Peterson of the Riverside Branch Office.

---

**Component(s):**
USAO - California, Central

**Contact:**
Thom Mrozek
Spokesperson/Public Affairs Officer
United States Attorney's Office
Central District of California (Los Angeles)
213-894-6947

**Press Release Number:**
19-006

Updated January 29. 2019